## In re HEINSFURTER.

(District Court, S. D. Iowa, E. D.    August 19, 1899.)

### No. 725.

**1. BANKRUPTCY—PROOF OF DEBT—ESTOPPEL.**

Where the vendor of goods brought an action of replevin in a state court, claiming a rescission of the sale on the ground of fraudulent representations by the vendee as to his solvency, and under the writ of replevin secured possession of part of the goods sold, and the vendee was adjudged bankrupt, and the vendor thereupon filed proofs of debt in the bankruptcy proceedings, claiming from the estate the difference between the original purchase price of the goods and the value of those recovered in replevin, but without abandoning or dismissing the proceedings in the state court,

which remained pending and undetermined, *held*, that such creditor could not prove his claim, either in whole or in part, without first surrendering to the trustee in bankruptcy the goods returned under the writ of replevin, or the value thereof.

2. SAME—UNLIQUIDATED DEMANDS.

Under Bankruptcy Act 1898, § 63b, there can be no proof and allowance of an unliquidated claim against the estate of a bankrupt until its amount has been made certain, pursuant to an application to the court of bankruptcy, and in such manner as that court shall direct.

In Bankruptcy. On review of decision of referee in bankruptcy disallowing a claim offered for proof against the estate of the bankrupt by the Guthman, Carpenter & Telling Company, a creditor.

Ira R. Tabor, for claimant.

Isaac Petersberger, for defendant.

WOOLSON, District Judge. The evidence introduced before the referee in the proceeding to prove up the contested claim accompanies the certificate of the referee. The facts in the case, so far as the same relate to the actual transactions of the parties, are not in dispute. In brief, these are as follows: Heinsfurter, the bankrupt, was in the year 1898 engaged as a merchant, with principal store at Davenport, Iowa, but with a branch store at Erie, Ill. On September 9th of that year, at the solicitation of the traveling salesman of the claimant, the Guthman, Carpenter & Telling Company, Heinsfurter gave claimant an order for goods for his Erie house. Heinsfurter was not asked for, nor did he give, any statement to the said salesman as to his financial condition at that time. Shortly after giving this order, the agent or representative at Davenport of the Wilber Mercantile Agency called upon Heinsfurter for a statement as to his financial condition, stating that he wanted it for such agency. Heinsfurter states that he told the representative that he could make him no statement, but could only give him a statement made to Dun and Bradstreet last January, and that this representative could look that up, and that he then gave him a copy of such statement. Heinsfurter testifies that this statement was, at the time it was made to Dun and Bradstreet, a truthful statement of his financial standing, as obtained from his books. The evidence shows that, at the date of purchase of the goods ordered through said salesman, Heinsfurter was in fact insolvent (accepting for such term the definition given in the bankruptcy statute), but that from time to time, as necessity therefor existed, his relatives had come to his assistance and "tided over" his immediate financial difficulties, and that, if such assistance had been given in the fall of 1898, he might, at least for the time, have continued his business. Instead of this assistance, his sister, who was a large creditor, demanded a chattel mortgage on all his goods, as security for the indebtedness to her; and thereupon he moved the Erie stock to Davenport, and on November 17, 1898, he gave his sister the chattel mortgage demanded. Subsequently the stock went into the hands of a receiver. The Guthman, Carpenter & Telling Company instituted in the state court a suit in replevin for the goods sold by them to Heinsfurter, and de-

clared the contract of sale to him to be rescinded, on the alleged fact that, at the time of his purchase of said goods from them, Heinsfurter was insolvent, and fraudulently bought said goods with the intention, then held by him, not to pay for the same, etc.     Under the writ of replevin issued in such suit, there were taken and returned to said replevying plaintiffs 186 pairs of shoes, identified by said plaintiffs as part of the goods by them sold and delivered to Heinsfurter. This replevin suit has not been prosecuted to judgment.     The referee finds the value of said goods so returned to said plaintiffs under said replevin writ to be $200, while said claimant avers the same to be but $184.55.     Upon February 24, 1899, said Guthman, Carpenter & Telling Company filed its verified proof of debt with Referee Helmick, wherein it claims that the goods by it sold to Heinsfurter which were not taken under said writ of replevin had been sold by Heinsfurter or the said receiver, and that there is due to claimant from the estate of said bankrupt the difference between the aggregate amount which Heinsfurter, under his order and purchase, was to pay (said aggregate is conceded to be $350.45) and the value of the goods returned under said writ, which difference claimant alleged to be $165.90.     Perhaps the most direct method of presenting the situation as asserted by said claimant is to copy a portion of its proof of debt as filed with the referee.     After averring the sale and delivery of the goods, and the fraudulent intent, etc., of said Heinsfurter with reference thereto, it says:

Claimant further states that, as soon as it heard of the fraudulent intention of said Heinsfurter, it immediately caused to be rescinded, and did rescind, the said contract of sale to said Heinsfurter; that it so elected to rescind the same as soon as it was informed of the fraudulent conduct and intention on the part of Heinsfurter, of the giving of the chattel mortgage above referred to, and of transferring above-described property from Erie, Ill., to Davenport, Iowa, without the knowledge or consent of claimant, with intention of defrauding this claimant.

After reciting the institution, as above stated, of said action in replevin, and that goods to the value of $184.55 were returned thereunder to said claimant, and that the value of the goods not returned as commanded in the writ was $165.90, and that such goods not returned had been sold by Heinsfurter and the receiver, the claim herein is stated as follows:

Claimant alleges, and so charges the fact to be, that prior to the contract of sale by it to said Heinsfurter, and as an inducement thereto, the said Heinsfurter made false and fraudulent representations as to his assets and liabilities, with reference to his financial standing, which was done for the purpose and with the intent to procure the said merchandise from claimant, in fraud of its rights, and with the intention not to pay for the same; that the said Heinsfurter took, appropriated, and converted to his own use the goods, wares, and merchandise described in claimant's petition in replevin in the district court of Scott county, Iowa, which petition is here referred to, and made a part of this record in this matter.

The petition is not attached or exhibited by copy, or otherwise referred to than in the above extract.     But the briefs of the counsel are on the basis, justified by the language of this proof of debt, that the replevin action described and included the entire goods originally bought from claimant by Heinsfurter.

Claimant further alleges that it rescinded the contract of sale of said merchandise, and asks that its claim be allowed by the referee in the sum of $165.90, for the wrongful and fraudulent conversion and detention of said property.

The objections filed against this claim are, in substance: (1) That claimant, having elected to proceed in the state court in replevin of said property, is estopped from proving any claim here, since, having replevied, it cannot prove its claim in whole or in part in bankruptcy; (2) if this is a claim in tort, it has not been reduced to judgment or liquidation, and no order has ever been made by the court allowing or directing its liquidation as a debt; (3) the claim as presented is not a provable debt, under the statute.

The referee held that said replevin action did not estop claimant from proving up its claim in bankruptcy; that for goods converted the claim may be proven without having the same first liquidated by judgment; that said bankrupt bought said goods in good faith, in the ordinary course of business, and that the title thereto rested in him; that the goods replevied by claimant constituted a payment on the claim, and a preference by claimant received, and that until said preference, to wit, the value of the goods replevied, found to be $200, and costs herein, $16.20, are by claimant paid to the trustee of the bankrupt estate, allowance of claim presented must be denied.

Originally claimant held a claim, under contract with Heinsfurter, for goods sold and delivered at an agreed price. Here, then, was a debt clearly provable under section 63a, subd. 4, as upon contract. Had payment been made by Heinsfurter, or part of goods by him be returned, unquestionably the remainder of the contract aggregate would have been a provable debt. (I am not here considering the matter of preference.) But the claimant instituted a replevin suit for the identical goods whose purchase was the contract just referred to. The cause of action was based on the rescission by claimant of the contract. The right to rescind was based on alleged fraud on the part of the purchaser, in that, being then insolvent, and knowing such insolvency, he falsely and fraudulently represented himself as solvent; that at the time of such purchase he did not intend to pay for said goods; that claimant, in reliance on such representation, and believing the purchaser intended to pay for the goods, sold and delivered them, etc. This rescission by claimant of such contract is expressly stated in the extracts above given from proof of debt filed herein. It is not necessary to consider here whether the claimant could have rescinded the contract of sale as to a part of the goods, viz. those returned under the writ, leaving the remainder, to wit, those not so returned, standing under contract of sale; for by the extracts above given it plainly appears that the claimant rescinded, if any portion, the entire contract of sale, in bringing said replevin action. What is the scope of said action,—the result that may be reached therein,—under the Iowa statutes? Section 4175, Code Iowa 1897, directs that the jury must assess the value of the property, and the damages for the taking or detention thereof, and, if so asked by either party, shall find the value of each article, etc. Section 4176 provides:

The judgment shall determine which party is entitled to the possession of the property, and shall designate his right therein, and if such party have not the possession thereof, shall also determine the value of the right of such party, which right shall be absolute as to an adverse party, and shall also award such damages to either party as he may be entitled to for the illegal detention thereof.

Section 4178 confers on the party found to be entitled to (but not already in) possession of the property the right to have execution for the value thereof, or, if a part only of the articles are found, he may have them, and execution for value of remainder. Assuming, then, that claimant shall, in said replevin action, prove the basis (false representations, etc., as to solvency, and willful intent not to pay) of its right to rescind, it will then be entitled to the property it has received under the replevin writ, and, not the contract price for the remainder, but the value of the remainder of such goods as the jury. on evidence before them, shall assess same; also, to judgment for any damages for detention or taking the goods to which the jury may find it entitled. We may here notice that in this replevin action the claimant is given all the relief, so far as the judgment is concerned, which it can have,—the goods returned, the value of any not returned, and damages for taking and detention of property. Having the action now pending in the state court, wherein is claimant's right to proceed here? The suggestion is not without force that the claimant, by proceedings herein, is splitting up its cause of action. It is single in the state court, though the remedy or relief may run in different directions. As the matter now stands, claimant, having received nearly 60 per cent. of its entire claim, in the return to it of the goods taken under the writ of replevin, is seeking here to prove up as a debt against the estate the remainder (about 40 per cent.) of that for which its action is still pending in the state court. May claimant thus proceed? It assumes to be at liberty, and, with its action in the state court pending, we are authorized to assume that it intends, to proceed with such action to the full extent authorized under the state statutes. If it shall in that action, by proof therein presented, sustain its right to rescind, claimant will therein obtain judgment for the goods already returned, for the value of those not returned, and any damages to which it may be found entitled. If claimant shall not furnish proof sufficient to sustain its attempted rescission of contract, judgment will be entered against it for return of goods, or their value, and for any damages properly assessable for the taking, etc. Thus far nothing appears indicating an intent to abandon the action in the state court, so far as the same relates to goods not taken under the writ and for damages. While the claim presented herein to the referee states that the amount involved in that (state) action is $184.55, the claim, as a whole, disproves this statement, and shows that the entire amount of goods sold and delivered to Heinsfurter is involved therein, and is still not disposed of by any order or judgment of court, or pleading filed by parties to such action. If claimant is successful in said action as to the goods returned, and would be permitted to withdraw all claim for further proceedings therein, the result would be that it would

have received, in goods returned, $200, and, if claim is herein allowed, would receive an additional amount in dividends. This would give claimant a decided benefit or advantage over other creditors of the estate.

Where is to be determined whether a basis for the attempted rescission actually occurred? Unless such basis actually did exist, claimant could not so rescind, as against its vendee or his resisting estate. Before claimant can be adjudged entitled to the goods returned to it, the state court must find, from the evidence therein submitted, that such basis is proven. Certainly as to that contest, begun in the state court, and pending therein when claim was herein filed, and not yet disposed of, this court cannot assume jurisdiction. But claimant recognizes that this court can do nothing as to the claim herein filed—no judgment on the merits having been had in the state court, and therefore no plea of res judicata can be herein filed—without this court first passing on the merits as to the basis for such rescission, and it has therefore submitted proof on that point. The state court may find differently on this question, from the finding that might be here reached. What then? Assume the state court, by its finding under the proof before it, sustains such rescission, and that this court, under proof here submitted, affirms the conclusion reached by the referee, and finds no basis existed for such rescission; what then results? Yet these contradictory findings are possible, as the matter now stands, even if claimant proceeds no further in the state court than to attempt to prove its right to the goods returned to it under the writ of replevin. These suggestions present the difficulties here encountered. The claimant has elected to present its proofs of debt herein as being "for the wrongful and fraudulent conversion and detention of property," and has thereby disclaimed any action on the original contract of purchase.

Precedents are not wanting in which the owner of property converted by another to his own use has been permitted to waive the tort and sue as upon an implied contract that the party so converting the property is impliedly held as thereby promising to pay the value thereof. But no case has been cited by counsel for claimant, nor have I found any case in the limited time at my disposal for the search, wherein a party rescinding or attempting to rescind a contract of purchase for fraud on the part of the purchaser has been permitted to retain part of the property obtained by him under his attempted rescission, and then elect to sue for the remainder of the property as upon an implied contract to pay therefor, because of the vendee's having converted it to his own use. If the contract of purchase in this case was, as the referee has found it, a legal, binding contract, the title to the property passed to the vendee. Such was the intent of the parties in this contract of purchase when it was made, according to the uncontradicted evidence. Then, the title to the property being in the vendee, he had a right to dispose of it,—could rightfully and lawfully sell it; and, whatever may have been his liability therefor, he was not liable for converting it to his own use or for selling it. Under the evidence as herein presented, I must affirm, so far as the pleadings herein permit, the finding of the referee

that Heinsfurter purchased said goods in good faith, and in the ordinary course of his business. This follows from the finding that he was not guilty of fraud towards claimant in his said purchase. The burden of proof is on claimant to sustain its allegation of such fraud. This finding of necessity compels the rejection of the claim as presented against the estate, for "wrongful and fraudulent conversion and detention of such property."

If the positions taken by the bankrupt and opposing creditors be accepted, viz. that the claim herein presented is an unliquidated claim, within the terms of section 63b of the bankruptcy statute, the same result must be reached, and the claim rejected, since there has been no application to the court for its liquidation, which, under said section, must be liquidated before the claim can be proved and allowed against said estate. So, if it be not an unliquidated claim, and if the claim for conversion of property can be directly proven up, there must be proof of the value of the property converted. This proof is wanting here. Had the claim been properly shown to have been based on contract of purchase, and so presented herein, the evidence herein would have been sufficient.

It may not be necessary to attempt consideration of that part of the referee's findings wherein he finds the receipt of $200 of property returned to claimant under said writ of replevin constituted a preference received by claimant. My time is so occupied with pressing official duties that I will not attempt to state my reasons for not accepting this finding, since, under the conclusions reached herein, such finding becomes immaterial. But I heartily accept the equitable conclusions reached thereunder, that, unless the claimant shall pay to the trustee the value of the goods so taken by claimant, it ought not to be permitted to prove up its claim herein. If the claim had been filed as on the original contract of purchase, the goods would have constituted a part of the assets of the estate, and claimant would have proved up its entire claim. Claimant has by force, albeit the force of the law, taken a part of these purchased goods, which, under the evidence here submitted, it is not entitled to so have taken. If it desires that its claim for all or a part of the goods be proved up, it must undo the wrong which, under the evidence, it has committed, and return the goods, or their value, before it is justly or equitably entitled to prove its claim herein. The action of the referee, rejecting the claim of the Guthman, Carpenter & Telling Company, must therefore be affirmed at the costs of said claimant. The referee will proceed with the case in bankruptcy accordingly, making such order and judgment as to said costs as may be just and proper.

An application to confirm a composition in said bankruptcy case has been presented to this court. Apparently a majority of creditors in number and amount of claims have agreed thereto. Action thereon by the court will be delayed until the 1st day of next September, to the end that the court may be advised as to what further proceedings, if any, claimant will take in the matter of its said claim. Unless action shall be taken by said date, and brought to the notice of said court, I shall feel authorized to assume that said claimant has

elected to take no further proceedings in bankruptcy, and as having withdrawn its said claim.

The referee will notify counsel of record herein of the conclusions reached by this court as above announced, and certify to counsel of record for claimant the last preceding paragraph hereof.